MADDOX, Justice.
This is a dispute over the proper distribution of interpleaded uninsured motorist insurance proceeds among competing claimants. The issue is whether the trial court’s division of proceeds equally among three insureds under the policy who had equal claims was proper, in view of the fact that two of the insureds also had received proceeds under the provisions of other insurance policies, namely policies covering their own automobiles.
To answer the question presented, we must interpret the law relating to the division of a common fund in an interpleader action in light of the legislature’s intent in *167 adopting the uninsured motorist provisions of Alabama law. The trial court divided the interpleaded fund, plus accrued interest, equally between the three claimants and did not consider the fact that two of the claimants had received proceeds as insureds under the uninsured motorist provisions of their own automobile liability insurance policies. We affirm.
The parties stipulated the relevant facts. On August 3, 1991, Dennis Howard Nail, an uninsured motorist, was driving an automobile in Limestone County, Alabama, that struck an automobile that Brandon Louis Pescevic was driving and in which Thomas Scott Lanier and Heather Womack were riding. As a result of Mr. Nail’s negligence or wantonness, Mr. Pescevic and Miss Womack were killed, and Mr. Lanier was severely injured. Mr. Lanier sued Mr. Nail for damages based on his personal injuries. Genia Putman, as Mr. Pescevic’s mother and administratrix of his estate, and Ken Womack, as Miss Womack’s father and administrator of her estate, sued Mr. Nail for damages based on wrongful death. All three claims for damages against Mr. Nail are of equal value and exceed all available uninsured motorist proceeds.
American Liberty Insurance Company issued Ms. Putman the automobile insurance policy, the proceeds of which have been interpleaded and which are at issue. The policy covered two automobiles, including the one that Mr. Pescevic was driving. The policy provided uninsured motorist benefits of $50,000 per automobile, for a total of $100,000. The parties submit that, pursuant to Travelers Insurance Co. v. Jones, 529 So.2d 234 (Ala.1988), Mr. Pescevic, Miss Womack, and Mr. Lanier were insureds under this policy. Mr. Lanier and Mr. Womack each collected $40,000 in uninsured motorist benefits from insurance policies on their own vehicles. Neither Mr. Pescevic nor Ms. Putman was an insured under either of these other policies.
American Liberty filed an interpleader action against Mr. Lanier, Ms. Putman, and Mr. Womack and deposited $100,000 with the Circuit Court of Limestone County. The trial court divided the proceeds equally among the defendants, awarding $33,-333.33 plus one-third of the accrued interest to each of them. Ms. Putman appeals.
We note that the trial court did not hear oral testimony. The trial court based its order solely on written stipulations of fact; thus, we are not limited in our review by any presumption of correctness. E.g., Sevigny v. New South Federal Savings & Loan Ass’n, 586 So.2d 884, 886 (Ala.1991); Phillips v. Knight, 559 So.2d 564, 567 (Ala.1990); Bownes v. Winston County, 481 So.2d 362, 364 (Ala.1985); Sheehan v. Liberty Mutual Fire Insurance Co., 288 Ala. 137, 145, 258 So.2d 719, 725 (1972). Furthermore, we recognize that principles of equity apply to inter-pleader actions. See, e.g., Marcus v. People’s Savings Bank, 227 Ala. 576, 151 So. 467, 468 (1933); First of Georgia Insurance Co. v. Riggle, 540 So.2d 766 (Ala.Civ.App.1989). Our duty, therefore, is to determine whether the trial court equitably divided the proceeds among the parties.
Although Ms. Putman admittedly can not make a direct claim for any portion of the proceeds that Mr. Lanier and Mr. Womack recovered under their own policies, she argues that it was inequitable for the trial court not to consider those separate recoveries when dividing the proceeds of her policy. She proposes a “hotchpot” method of calculation,[1] whereby the total amount of uninsured motorist insurance proceeds paid to all claimants from all policies ($180,000) would be divided into thirds. Under that method of distribution, Mr. Lanier and Mr. Womack, having already recovered $40,000 each, would receive only $20,000 each from the interplead-ed proceeds and Ms. Putman would receive $60,000.
Ms. Putman cites Sheehan v. Liberty Mutual Fire Insurance Co., 288 Ala. 137, 258 So.2d 719 (1972), in support of her argument that the claimants should “re *168 ceive an equitable proration of the inter-pleaded funds based upon the ‘unsatisfied portions ’ of their respective claims against the uninsured tortfeasor.” Appellant’s Brief at 6 (emphasis in original). In Sheehan, the Court held that the chancellor erred in equally dividing interpleaded funds among claimants of uninsured motorist proceeds who sustained unequal losses. 288 Ala. at 143-44, 258 So.2d at 724. Although Ms. Putman agrees that the values of the claims in the present action are equal, she argues that the rule of Sheehan applies because the values of the unsatisfied portions of the claims are unequal, because Mr. Lanier and Mr. Womack previously had received $40,000 each under the uninsured motorist provisions of their own automobile liability insurance policies.
This Court held in Sheehan that the equal division was improper because of the differences in actual damages suffered by the claimants. In this case, the claims are equal, but the net amounts recovered by the respective parties are different, because two of the claimants recovered benefits under the uninsured motorist provisions of their own policies. As the trial judge noted in his order, all the claimants in Sheehan were entitled to recover from a common fund established with proceeds of the policy in question. The only common fund in this case consists of the inter-pleaded proceeds; Ms. Putman is not legally or equitably entitled to recover from the proceeds of the policies under which Mr. Lanier and Mr. Womack recovered. Because of these distinctions, Sheehan is in-apposite.
As part of her argument that the trial court acted inequitably, Ms. Putman emphasizes that the trial court gave Mr. Lanier and Mr. Womack the benefit of stacking coverages under her policy, implicitly basing its ruling on Travelers Insurance Co. v. Jones, 529 So.2d 234 (Ala.1988). In Travelers Insurance Co. we gave effect to the plain meaning of the words “an injured person” in Ala.Code 1975, § 32-7-23(c), which the legislature had added in a 1984 amendment, to extend stacking “to all persons who are insureds, whether named insureds or not.” 529 So.2d at 240. This changed prior law so that automobile passengers involved in a collision who are not named insureds may nevertheless stack uninsured motorist coverages under the driver’s policy.
Under the provisions of § 32-7-23(c), as interpreted by this Court, Mr. Lanier and Mr. Womack were entitled to stack the $50,000 coverage on Ms. Putman’s second vehicle onto the $50,000 coverage on Ms. Putman’s automobile that was involved in the collision. The trial court refused to consider the fact that two of the claimants were entitled to uninsured benefits under their own separate policies. He awarded $33,333.33, plus one-third of the accrued interest on the interpleaded fund, to each of the three insureds under this policy. Under this distribution, Mr. Lanier and Mr. Womack received $33,333.33, plus one-third of the accrued interest, and also recovered $40,000 each under their separate policies. Thus, each of them received $73,333.33, plus one-third of the accrued interest. Ms. Putman received only $33,333.33 plus one-third of the accrued interest.
Ms. Putman’s main argument is the same here as it was before the trial judge. She contends that the legislature did not intend that Class II insureds “should benefit as handsomely ... at the expense of a traditional Class I insured,” Appellant’s Brief at 17, and that such a result is inequitable. We have thoroughly considered her argument and have analyzed it in light of the holding in Travelers Insurance Co., where this Court thoroughly examined the question of the legislative intent behind § 32-7-23(c). We believe that further discussion of legislative intent is not necessary for purposes of this appeal. It is sufficient to reiterate that the subsection must be construed to give effect to its plain language, which allows all injured persons who are insureds under a particular policy to stack.[2] Ms. Putman *169 is not an insured under the uninsured motorist provisions of either the Lanier policy or the Womack policy. Consequently, she had no right, legal or equitable, to claim any benefit under either of those policies.
Regarding the question whether the division was equitable, we note the equitable maxim “[e]quality is equity.” Woodlawn Federal Savings & Loan Ass’n v. Williams, 237 Ala. 446, 454, 187 So. 177, 184 (1939). A leading authority explains the principle:
“Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment.”
2 Spencer W. Symons, Pomeroy’s Equity Jurisprudence § 407 at 147 (5th ed. 1941). This case falls squarely within the scope of the maxim. The proceeds of Ms. Putman’s policy constitute the common fund, and three persons have equal claims against it. The fund is insufficient to pay all claims; therefore, it is equitable to divide the proceeds equally.
The trial judge did not err in determining that the only proceeds to which Ms. Put-man was entitled were those payable under the uninsured motorist provisions of her own automobile liability insurance policy. To allow her to recover more than a proportional share of the interpleaded proceeds would, in effect, allow her to recover under the provisions of the other policies, under which she is not an insured. We believe that the trial court has correctly construed legislative intent and has properly distributed the interpleaded proceeds; consequently, we affirm its judgment.
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., concurs in the result.

. "Hotchpot" is defined in Webster’s Third International Dictionary (Unabridged) (1971) as “a throwing into a common lot of property for equality of division.”

. A court is obligated to ascertain legislative intent from the language of the statute being construed. E.g., Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990). Courts must enforce *169 statutes as written when the language is plain and unambiguous. E.g., Robinson v. City of Montgomery, 485 So.2d 695, 696 (Ala.1986); State v. Dawson, 264 Ala. 647, 649, 89 So.2d 103, 105 (1956).